UNITED STATES of America Plaintiff,

v.

**Jay E. LENTZ, Defendant.**

**No. CR.A. 01–150–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 14, 2002.

Steve Mellin, Assistant United States Attorney, Patricia Haynes, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

Frank Salvato, Michael Liberman, United States Public Defender's Office, Alexandria, VA, for Defendant.

## TABLE OF CONTENTS

I. BACKGROUND ...................................................409

II. HEARSAY .....................................................409
 A. STANDARD AND APPLICABLE LAW UNDER Fed. R. Evid. 803(1)–803(3)..........................................................410
 1. Present Sense Impression: Rule 803(1) ...............410
 2. Excited Utterance: Rule 803(2).......................410
 3. State of Mind Exception: Rule 803(3) ................410
 B. ADMISSIBILITY OF STATEMENTS UNDER Fed. R. Evid. 803(1)–803(3)...........................................411
 1. Prior Abuse .........................................411
 a. Ruth Colvin .....................................412
 b. Pastor Victoria Heard ...........................412
 c. Laura Stewart...................................412
 d. Bernice Butt ....................................413
 e. Ann Sarkes .....................................413
 f. Liz and Melissa Byron ...........................414
 g. Reverend Lauren Gough ........................414
 h. Police Reports ...................................415
 2. Fear .................................................415
 a. Ruth Colvin .....................................416
 b. Pastor Victoria Heard ...........................416
 c. Ann Sarkes .....................................417
 d. Tim O'Brien.....................................417
 e. George Stevens .................................418
 f. Reverend Lauren Gough ........................418
 g. Officer Chris Bibro...............................419
 3. April 1996 Plans .....................................419
 a. Maureen McCloskey ...........................420
 b. Bernice Butt ....................................420
 c. Faye Osteen ....................................420
 d. Summer Keel ...................................421
 e. Mike Walker ....................................421
 f. Jenn Rigger.....................................422
 g. Tim O'Brien.....................................423
 4. Other Statements ....................................423
 a. Ms. Lentz's Diaries .............................423
 b. Interrogatory Answers ..........................424
 c. Ms. Lentz's Journal .............................424
 d. Ms. Lentz's Correspondence......................424
 e. Deposition Transcripts ..........................424
 C. ADMISSIBILITY OF STATEMENTS UNDER Fed. R. Evid. 801, 804(b)(6), and 807 ...............................425
 1. Non–hearsay.........................................425
 2. Residual Hearsay Exception: Rule 807 ...............425
 3. Forfeiture by Wrongdoing Exception: Rule 804(b)(6)...426
 D. CONCLUSION ON HEARSAY .......................................427

III. PRIOR BAD ACTS UNDER RULE 404(b) ...............................427
 A. STANDARD AND APPLICABLE LAW..................................427
 B. EVIDENCE OF ALLEGED PRIOR ABUSE OF MS. LENTZ.............428
 1. Intrinsic v. Extrinsic ..........................................429
 2. Application of Queen Test to Alleged Acts of Prior Abuse ................430
 a. Allegations of abuse from June 1990 to August 1991 ................430
 b. Alleged acts of abuse from November 1994 to December 1995........432
 c. Alleged harassing phone calls and threats made by Defendant to
 Ms. Lentz from 1991 to 1996 ...................................434
 C. EVIDENCE OF ALLEGED THREATS TO MS. LENTZ'S FRIENDS
 AND ACQUAINTANCES .........................................435
 D. EVIDENCE OF ALLEGED HARASSMENT OF MS. LOWE AND MS.
 CHERRY ........................................................436

IV. CONCLUSION ..................................................438

### MEMORANDUM ORDER

LEE, District Judge.

THIS MATTER is before the Court on (1) the Government's Motion in Limine to Admit Out–of–Court Statements made by Doris Lentz as Non–Hearsay or as an Exception to the Hearsay Rule, and (2) the Government's Motion to Admit Evidence under Rule 404(b).[1] Two issues are before the Court. The first issue before the Court is whether several statements made by the alleged decedent victim, Doris Lentz, to various individuals with reference to prior abuse by the Defendant, her fear of the Defendant, her plans surrounding the date of her disappearance; and writings documenting such items are admissible as non-hearsay or exceptions to the hearsay rule. The second issue before the Court is whether the Court should admit evidence of alleged bad acts under Rule 404(b) of the Federal Rules of Evidence with regard to (1) Defendant's alleged prior abuse of Ms. Lentz; (2) his prior misconduct toward persons associated with Ms. Lentz; and (3) his harassment of other women. After a close examination of the facts and the submissions of the parties, the Court renders the following holding.

With respect to the admissibility of the hearsay statements, the Court holds as follows. First, none of the proffered hearsay statements by Ms. Lentz are admissible to show prior abuse. Second, the proffered hearsay statements showing fear are only admissible under the state of mind exception to the hearsay rule to show Ms. Lentz's emotional state of mind and not the factual occurrence engendering that state of mind. Third, most of the statements by Ms. Lentz of intent and belief surrounding the date of her disappearance are admissible under the state of mind exception to the hearsay rule to promote an inference that she did in fact engage in such conduct. Fourth, many of the documented statements are inadmissible because they either do not reflect any relevant state or mind or their probative value is substantially outweighed by prejudice to Defendant. Finally, neither the residual hearsay nor the forfeiture of wrongdoing exceptions to the hearsay rule apply to admit these statements. Accordingly, the Government's Motion in Limine to Admit Out–of–Court Statements made by Doris Lentz as Non–Hearsay or as an Exception to the Hearsay Rule is GRANTED in Part and DENIED in Part.

---

1. The Court appreciates the time and effort all counsel devoted to briefing these issues before trial. Pre-trial briefing of theses complex is-sues will save countless hours in trial avoiding protracted bench conferences over evidentiary questions.

With respect to the admission of prior bad acts by Defendant, the Court holds as follows. First, all of the evidence of Defendant's alleged prior abuse of Ms. Lentz is admissible as prior bad acts, *except* for (a) the alleged serious physical abuse of Ms. Lentz resulting in black eyes and broken ribs; and (b) threats made by Defendant to Ms. Lentz prior to her disappearance. Second, all of the proposed acts of Defendant's alleged prior misconduct toward persons associated with Defendant's alleged harassment of other women is inadmissible as prior bad acts. Accordingly, the Government's Motion to Admit Evidence under Rule 404(b) is GRANTED in Part and DENIED in Part. A detailed rendition of the Court's reasoning is as follows.

## I. BACKGROUND

Defendant Jay E. Lentz and Ms. Dorris Lentz were married in 1989. During their marriage they had a daughter, Julia. The couple subsequently separated in 1993. Ms. Lentz lived in Arlington, Virginia and Defendant lived in nearby Maryland. In the spring of 1996, the accused and Ms. Lentz were in the midst of a hotly contested divorce proceeding in Maryland. On April 22, 1996, the Government alleges that the Lentz's daughter was visiting her father in Maryland. Defendant was supposed to return the child to Ms. Lentz later that evening. On the day in question, Ms. Lentz told a friend and her co-workers she was going from her home in Virginia to pick up her daughter at Defendant's home in Maryland. Ms. Lentz did not pick up her daughter and has never been heard from again.

Ms. Lentz and Defendant were scheduled to appear in divorce court in Maryland the next day and Ms. Lentz did not appear. The divorce court was scheduled to consider financial issues at this proceeding. Several days after Ms. Lentz's disappearance, her car was found abandoned in Washington, D.C. The Government's theory of the case is that the accused kidnaped his wife by luring her from Virginia to Maryland in order to murder her. Ms. Lentz's body has never been found.

Defendant is charged in a three-count Indictment for kidnaping resulting in the death of Ms. Lentz. Count One charges Defendant with kidnaping resulting in death in violation of 18 U.S.C. § 1201(a). Count Two charges Defendant with Kidnaping in violation of the same statute. Count Three charges Defendant with Interstate Domestic Violence in violation of 18 U.S.C. § 2261(a)(2), *i.e.*, causing a spouse or partner to travel across state lines by force or coercion with the intent to commit a crime of violence injuring the spouse or partner.

The Court has two evidentiary motions before it in this matter. The first motion addresses several hearsay statements of Ms. Lentz concerning her prior abuse, fear of defendant, and her plans surrounding her disappearance. The second motion addresses several items of evidence the Government seeks to admit concerning alleged prior bad acts by the Defendant. Each will be addressed in turn.

## II. HEARSAY

The Government seeks to admit various statements of several witnesses who had conversations with Ms. Lentz about Defendant and/or her travel plans prior to her disappearance. In particular, the Government seeks to introduce statements about (a) Defendant's prior abuse of Ms. Lentz, (b) the fear Ms. Lentz had of Defendant and the threats that Defendant made to her, (c) Ms. Lentz's daughter's and Defendant's travel plans surrounding the date of the incident, and (d) various other statements that exhibit Defendant's behavior and the divorce litigation. The Government argues that all of these statements

are admissible either as non-hearsay, *see* FED. R. EVID. 801, or under the residual hearsay exception, *see* FED. R. EVID. 807, or forfeiture of wrongdoing exception, *see* FED. R. EVID. 804(b)(6), to the hearsay rule. Then, the Government itemizes particular statements by individuals and argues that such statements would be admissible under the present sense impression, *see* FED. R. EVID. 803(1), excited utterance, *see* FED. R. EVID. 803(2), and state of mind, *see* FED. R. EVID. 803(3), exceptions to the hearsay rule.

In response to the Government and Defendant's submissions, the Court first gives a general overview of the present sense impression, excited utterance, and state of mind exceptions to the hearsay rule, then it analyzes each statement within the four categories presented, and rules on the admissibility of each. Second, the Court addresses in general why the statements are not admissible as non-hearsay or under the forfeiture of wrongdoing or residual hearsay exceptions to the hearsay rule.

### A. STANDARD AND APPLICABLE LAW UNDER FED. R. EVID. 803(1)–803(3).

#### 1. Present Sense Impression: Rule 803(1).

■ A present sense impression is a statement "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." FED. R. EVID. 803(1). Under this exception, the declarant should be describing an event that is ongoing and startling or just occurred. *See United States v. Jackson,* 124 F.3d 607, 618 (4th Cir.1997). Little time or no time must exist between the occurrence and the statement, which operates to negate the likelihood of a deliberate or conscious misrepresentation. *See First State Bank of Denton v. Md. Cas. Co.,* 918 F.2d 38, 41 (5th Cir.1990). The crucial provision of this exception is immediacy. *See* CHARLES E. WAGNER, 2 FEDERAL RULES OF EVIDENCE CASE LAW COMMENTARY 589 (2001–2002 ed.) (distinguishing such exception from the excited utterance exception, see FED. R. EVID. 803(2), on the basis that the statement must be made simultaneous with the event being observed).

#### 2. Excited Utterance: Rule 803(2).

■ An exited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." FED. R. EVID. 803(2). To qualify as an excited utterance under Rule 803(2) the declarant must have (1) experienced a startling event or condition and (2) reacted with spontaneity, excitement, or impulse rather than the product of reflection and fabrication. *See Morgan v. Foretich,* 846 F.2d 941, 947 (4th Cir.1988). The key to this exception is that the statement must be made contemporaneously with the excitement of the startling event. *See United States v. Wesela,* 223 F.3d 656, 663 (7th Cir.2000); *see also United States v. Phelps,* 168 F.3d 1048, 1054 (8th Cir.1999) (citation omitted) (holding that statements made to 911 dispatcher that someone had been shooting at her and requesting assistance are admissible under excited utterance exception); *Sakaria v. Trans World Airlines,* 8 F.3d 164 (4th Cir.1993) (noting the significance of spontaneity in order to ensure trustworthiness).

#### 3. State of Mind Exception: Rule 803(3).

■ A statement is admissible hearsay under the state of mind exception to the hearsay rule if it is a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not

including a statement of memory or belief to prove the fact remembered or believed." FED. R. EVID. 803(3). To be admissible under this exception, a declaration must "mirror a state of mind, which in light of all the circumstances, including proximity, is reasonably likely to have been in the same condition existing at the material time." *See Colasanto v. Life Ins. Co. of North America*, 100 F.3d 203, 212 (1st Cir.1996) (quoting 2 John W. Strong, McCormick on Evidence § 274 (4th Ed.1992)). The statement should not look backward or describe a declarant's past memory or belief about another's conduct. *See United States v. Carmichael*, 232 F.3d 510, 521 (6th Cir.2000) (citing *United States v. LeMaster*, 54 F.3d 1224, 1231 (6th Cir.1995)). The statement must be limited to a declaration showing the declarant's state of mind and not the factual occurrence engendering that state of mind. *See United States v. Joe*, 8 F.3d 1488, 1492 (10th Cir.1993) (holding that a victim's statement that she feared the defendant is admissible under the state of mind exception, however, the reasons why the victim feared the defendant was an inadmissible factual occurrence). The declarant must not have had an opportunity to reflect and possibly fabricate or misrepresent her thoughts. *See United States v. LeMaster*, 54 F.3d 1224 (6th Cir.1995). A statement may be excluded when a declarant has time to reflect because the statement may reflect the declarant's then existing state of mind as to a past fact as opposed to a present existing fact.

▮ Nonetheless, a statement is admissible whenever the declarant's intention itself is a distinct and material fact in the chain of circumstances. *See Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285, 295, 12 S.Ct. 909, 36 L.Ed. 706 (1892) (holding admissible statements that a declarant intended to travel to meet a particular person when he was never heard of again). Such a statement of intent is admissible under the state of mind exception to the hearsay rule to promote an inference of the declarant's future conduct. *See United States v. Jenkins*, 579 F.2d 840, 842–43 (4th Cir.1978). Moreover, a declarant's belief surrounding the date of her disappearance is admissible to show what the declarant believed about a particular incident. *See United States v. Hairston*, 46 F.3d 361, 365 (4th Cir.1995).

## B. ADMISSIBILITY OF STATEMENTS UNDER FED. R. EVID. 803(1)–803(3).

### 1. Prior Abuse

The Government seeks to introduce several statements of Ms. Lentz through various witnesses, to show that Defendant had a history of abusing Ms. Lentz, under the state of mind, excited utterance, and present sense impression exceptions to the hearsay rule. In particular, on various occasions Ms. Lentz made statements to others that Defendant hit her or threatened her. In order for statements of prior abuse to qualify as a present sense impression exception, Ms. Lentz had to be describing or explaining the abuse while it was occurring or immediately after such occurrence. *See, e.g., Jackson*, 124 F.3d at 618. Statements made several hours or days after the abuse or that recall earlier events are inadmissible under this rule.

In order for statements of the prior abuse to qualify under the excited utterance exception to the hearsay rule, Ms. Lentz must have just experienced the abuse or altercation and should still be acting under the stress of the altercation. *See Morgan*, 846 F.2d at 947. Many of the hearsay statements the Government seeks to introduce under this exception appear to have been relayed a significant amount of time after the abuse, thus giving Ms. Lentz time to reflect on her statements. Such statements are inadmissible because

a strong possibility exists that Ms. Lentz considered the consequences of the statement or exercised choice or judgment.

In order for statements of prior abuse to qualify under the state of mind exception to the hearsay rule, the statements must show Ms. Lentz's state of mind at the time period in question. Ms. Lentz's statements of memory or belief about Defendant's abusive conduct that occurred in the past are an impermissible attempt to prove as true the fact remembered or believed. *See Carmichael*, 232 F.3d at 521 (citing *LeMaster*, 54 F.3d at 1231). In general, a mere act of prior abuse itself cannot be admitted under the state of mind exception because Ms. Lentz would be recalling past factual occurrences and not the state of her emotions at the time. Each proffered witnesses' recollection of prior abuse will be addressed in turn.

### a. Ruth Colvin

 The Government seeks to introduce hearsay testimony from Ruth Colvin under the state of mind exception to the hearsay rule stating that (1) Ms. Lentz said that she had a fight with Mr. Lentz when she came to the Capitol Hill nurse's station; (2) Ms. Lentz said that she had a friend who she could stay with; and (3) that Ms. Lentz had bruises on her arms. First, statements by Ms. Lentz that she had a fight with Defendant are inadmissible hearsay under the state of mind exception to the hearsay rule because Ms. Lentz's statement merely reports on a past event (the fight) and does not exemplify any state of mind that Ms. Lentz may have had at the time of the encounter. Second, statements by Ms. Lentz that she said that she had a friend with whom she could stay does not exemplify Ms. Lentz's state of mind: they do not show any plan, motive, design, mental feeling, pain, or bodily health being experienced by Ms. Lentz. At most, the jury may infer that Ms. Lentz was fearful of staying at home;

however, such is impermissible to show prior abuse. With respect to the third offer of proof, Ruth Colvin's observation that Ms. Lentz had bruises on her arms is not hearsay and she may testify as to what physical condition she observed, which is subject to cross-examination.

### b. Pastor Victoria Heard

 The Government seeks to introduce hearsay testimony from Pastor Heard under the state of mind exception to the hearsay rule stating that (1) Ms. Lentz called her at least ten times to discuss claims that Defendant abused her; (2) Ms. Lentz was very emotional and scared of him; and (3) Defendant threw her against the wall. First, statements by Ms. Lentz discussing alleged abuse are inadmissible under the state of mind exception to the hearsay rule because it merely reports on a past event and does not exemplify any state of mind that Ms. Lentz may have had at time of the abuse. Second, Pastor Heard's observation and/or statements by Ms. Lentz that she was very emotional and scared of Defendant is admissible to the extent of showing Ms. Lentz' fear of Defendant; however, the prior abuse as the reason why Ms. Lentz feared Defendant is inadmissible because it explains a past factual occurrence. Third, statements that Defendant threw Ms. Lentz against the wall are inadmissible under the state of mind exception because it merely reports on a past event and does not exemplify any state of mind that Ms. Lentz may have had at time of the encounter. In sum, Pastor Heard may testify about what she overheard Defendant say and that Ms. Lentz exhibited fear; however, Pastor Heard may not testify to whatever statements Ms. Lentz may have made about allegations of abuse.

### c. Laura Stewart

 The Government seeks to introduce hearsay testimony from Laura

Stewart under the state of mind, excited utterance, and/or present sense impression exceptions to the hearsay rule. In particular, the Government seeks to introduce Ms. Lentz's statements to Ms. Stewart that in August 1991 when Ms. Lentz and Defendant got into a fight, Defendant pushed her against the bed and caused her to fall into the wall. The Government informs the Court that Ms. Lentz went to Ms. Stewart's house after the incident, and at that time Ms. Stewart took pictures of the abuse. First, these statements do not fall under the present sense impression exception because the statements of abuse were not made while Ms. Lentz was experiencing or perceiving the abuse that occurred: they were made after the alleged event. Second, these statements are not admissible under the present sense impression exception because they merely report on a past event and do not exemplify any state of mind that Ms. Lentz may have had at the time of the alleged beating. Third, these statements are not admissible under the excited utterance exception because no indication exists there was ongoing excitement in relation to the beating. The Government merely proffers that Ms. Lentz told Ms. Stewart about the incident after the physical abuse occurred. Under such recitation, it is highly possible that Ms. Lentz had a chance to calm down and reflect on her thoughts prior to telling Ms. Stewart about the abuse incident. Accordingly, these statements are inadmissible hearsay, and may not be introduced at trial. However, any pictures taken or independent observations by Ms. Stewart of Ms. Lentz are admissible non-hearsay.

#### d. Bernice Butt

The Government seeks to introduce hearsay testimony from Bernice Butt, Ms. Lentz's mother, under the state of mind exception to the hearsay rule. In particular, the Government seeks to introduce evidence that (1) Ms. Lentz told her of specific instances of abuse and how it would occur on a regular basis; (2) Ms. Lentz told her about the August 1991 incident where Defendant hit her and photos were taken; and (3) Ms. Lentz told her of Defendant's bad checks and partial payments concerning the child support payments. None of these statements are admissible under the state of mind exception to the hearsay rule because these are statements where Ms. Lentz is looking backward to describe factual events that have already occurred. These statements do not exemplify any state of mind that Ms. Lentz may have had at the time of the beating; therefore, they are not admissible to show prior abuse under the state of mind exception to the hearsay rule.

#### e. Ann Sarkes

The Government seeks to introduce hearsay testimony from Ann Sarkes, under the state of mind exception to the hearsay rule. In particular, the Government seeks to introduce several statements that Ms. Lentz told her that Defendant beat her in the past, Ms. Lentz said Defendant broke her ribs early in the marriage but Ms. Lentz did not want to get a restraining order because it would make Defendant more upset. Ms. Sarkes also prepared notes of her discussions with Ms. Lentz noting that Ms. Lentz became visibly fearful and emphatically said to her statements that she was afraid Defendant would take her away from her daughter and that Defendant had broken her ribs before and blackened her eyes. Ms. Sarkes' notes further indicate Ms. Lentz's comments that "I would not be surprised if he tried to kill me. I sense it is just a matter of time, In fact, if I ever end up dead, tell the cops he did it! Because it will have been him." Finally, Ms. Sarkes observed that Ms. Lentz had bruises on her right rib cage, right arm, and observed that Ms. Lentz was fearful.

The Court holds as follows with respect to each statement. First, any observations by Ms. Sarkes that Ms. Lentz had bruising would be admissible non-hearsay. Second, Ms. Lentz's statements that she was fearful or terrified out of her mind would be admissible under the state of mind exception to the hearsay rule because it is permissible to reflect the emotion that Ms. Lentz felt in relation to Defendant without describing the event. *See Joe*, 8 F.3d at 1492. Third, the remaining statements regarding Defendant's alleged past abusive actions and her beliefs of how Defendant would act in the future are inadmissible hearsay under the present sense impression, state of mind, and excited utterance exceptions. The present sense impression exception is inapplicable because these are not statements of Ms. Lentz while she was perceiving the alleged actions of Defendant. The excited utterance exception is inapplicable because the startling incidents referenced by Ms. Lentz either have yet to take place or were not made while Ms. Lentz was experiencing the ongoing excitement of the particular incidents.

The fact that Ms. Lentz was visibly upset when she was recalling the events is irrelevant to the admission of her statements of such factual occurrences, under the excited utterance exception, because Ms. Lentz had time to reflect and it would only show Ms. Lentz's then existing state of mind as to a past fact. Ms. Lentz was describing events that possibly occurred weeks, months, or even years earlier. Similarly, the state of mind exception to the hearsay rule is inapplicable to the admission of such statements because Ms. Lentz had sufficient opportunity to reflect on the past events therefore such statements only show her present state of mind with regard to past occurrence.

### f. Liz and Melissa Byron

■ The Government seeks to introduce hearsay testimony from Liz and Melissa Byron, under the state of mind exception to the hearsay rule stating that Defendant threw Ms. Lentz against a wall and pushed her down the steps. In addition, the Government seeks to introduce a double hearsay statement that Defendant told Ms. Lentz that Defendant would see Ms. Lentz dead first before Ms. Lentz got a nickel out of the marital home in order to show motive or intent. The Court holds that the statements discussing Ms. Lentz being abused by Defendant are inadmissible under the state of mind exception to the hearsay rule because they merely report on past events and do not exemplify any state of mind that Ms. Lentz may have had at the time of the abuse. Similarly, Ms. Lentz's statement about what Defendant may have previously stated is not admissible under the state of mind exception because it does not exemplify Ms. Lentz's state of mind at the time of hearing the statement. Therefore, the Byrons' enumerated statements with respect to prior abuse are inadmissible hearsay.

### g. Reverend Lauren Gough

■ The Government seeks to introduce hearsay testimony from Reverend Lauren Gough, of Ms. Lentz's statements to her, under the state of mind exception to the hearsay rule stating that (1) Defendant had abused her and threatened her over the phone on numerous occasions; and (2) Ms. Lentz was attending a different parish because she was afraid that Defendant would take their daughter from the nursery during service. The Government also seeks to introduce testimony that Revered Gough observed Defendant stand up during a church service, the weekend after Ms. Lentz left the area, and yell that Reverend Gough had broken up their marriage and he would not be able to see his child.

■ The Court holds as follows with respect to each statement. First, statements that Defendant abused and threatened Ms. Lentz are inadmissible under the state of mind exception to the hearsay rule because such statements merely report on past events and do not exemplify any state of mind that Ms. Lentz may have had at the time of the abuse. Second, the reason why Ms. Lentz changed churches is inadmissible to show prior abuse because it does not reflect any relevant present state of mind. This statement merely explains Ms. Lentz's actions were based on some pre-existing fear: no indication exists that it mirrors any fearful state of mind. Third, Reverend Gough's recitation of Defendant's statements may be admissible as a party admission and is not hearsay. *See* FED. R. EVID. 801(d)(2). However, the Court excludes such statement under Rule 403 because any probative value such statement could provide is substantially outweighed by waste of time. *See* discussion *infra* Part III.A.

### h. Police Reports

■ The Government seeks to introduce several police reports under the state of mind, excited utterance, and present sense impression exceptions to the hearsay rule. In particular, a August 17, 1991 police report states that on "several occasions" Defendant had come home intoxicated, Ms. Lentz and Defendant had gotten into verbal and physical altercations, and Ms. Lentz had bruises and swelling on both arms. A November 4, 1994 police report notes a complaint filed by Ms. Lentz against Defendant describing a November 2, 1994 incident where Defendant grabbed Ms. Lentz by the arm, pulled her outside of the house, and threw her down a hill in his front yard. A June 2, 1995 police report notes that Ms. Lentz told Officer Chris Bibro that Defendant had been leaving harassing phone calls. This report also contains a double hearsay

statement that Defendant told Ms. Lentz that OJ Simpson had the right idea. A December 4, 1995 police report notes that Ms. Lentz continued to receive harassing phone calls from Defendant, including one where Defendant called Ms. Lentz a "f*cking bitch," a "c*nt," and an "unfit mother." A December 14, 1995 police report notes that Defendant was supposed to return their daughter to Ms. Lentz following a visit, yet refused to do so until Ms. Lentz paid a late fee he claimed she owed to the daycare center.

This Court holds as follows with respect to the police reports. Essentially, any comments contained within the reports are double hearsay. They are inadmissible under the present sense impression and excited utterance exceptions to the hearsay rule because no indication exists that the officer recording such statements was perceiving the incident or even that Ms. Lentz had just experienced the incident and was still acting under the stress of the altercation. The reports are also inadmissible under the state of mind exception because they merely report on past events and do not exemplify any state of mind that Ms. Lentz may have had at the time of the incidents. Moreover, this Court excludes Ms. Lentz's recollections of Defendant's references to OJ Simpson under Rule 403 because any probative value it could provide would be outweighed by the prejudice to Defendant. *See* discussion *infra* Part III.A.

### 2. Fear

The Government seeks to admit several of Ms. Lentz's statements under the state of mind, excited utterance, and present sense impression exceptions to the hearsay rule, in order to show that Ms. Lentz was fearful of Defendant. For a statement as it relates to fear to be admissible under the present sense impression exception,

Ms. Lentz had to be perceiving some startling occurrence as she was expressing her statements of fear at that time or immediately thereafter. *See, e.g., Jackson,* 124 F.3d at 618.

In order for statements of fear to qualify under the excited utterance exception to the hearsay rule, Ms. Lentz must have just experienced the fear invoking event and she should still be acting under the stress of the incident. *See Morgan,* 846 F.2d at 947. Many of the hearsay statements the Government seeks to introduce under this exception appear to have been relayed a significant amount of time after the incident, thus giving Ms. Lentz time to reflect on her statements. Many of these statements are inadmissible because a strong possibility exists that Ms. Lentz considered the consequences of the statement and exercised choice or judgment.

For statements of fear to qualify under the state of mind exception to the hearsay rule, the statements must reflect Ms. Lentz's state of mind at the time period in question. However, the statements of fear presented must be limited to a declaration showing the state of mind during the time in question and not the factual occurrence engendering that state of mind. *See Joe,* 8 F.3d at 1492. In general, the stated actions that caused the emotion itself are not admitted because such statements would be a recitation of past factual occurrences and not the state of her emotions at such time. Each proffered witnesses' recollection of fear will be addressed in turn.

### a. Ruth Colvin

 The Government seeks to introduce hearsay testimony from Ruth Colvin under the state of mind exception to the hearsay rule recalling Ms. Lentz's statement that "if anything ever happens to me—Jay did it." The Court holds that this statement cannot be offered for its truth, which is that Defendant caused Ms.

Lentz's disappearance, because this statement only shows Ms. Lentz's belief as to Defendant's actions to be taken in the future. This statement may be admissible as non-hearsay to show that at this point in time Ms. Lentz feared Defendant. However, the Court will utilize its discretion to exclude such statement under Rule 403 because any probative value such statement could provide would be cumulative and substantially outweighed by prejudice to Defendant. *See* discussion *infra* Part III.A. Therefore, such statement is excluded.

### b. Pastor Victoria Heard

 The Government seeks to introduce hearsay testimony from Pastor Victoria Heard under the present sense impression and state of mind exceptions to the hearsay rule recalling Ms. Lentz saying that Defendant was stalking her. In addition, the Government seeks to introduce double hearsay statements that Defendant threatened her, threatened to take her daughter, told her that OJ could happen again, and that if Defendant got to her, "there would be no body." Pastor heard also described Ms. Lentz as emotional and saying that she was very scared of Defendant.

With respect to each statement the Court holds as follows. First, Pastor Heard's observations of Ms. Lentz are not hearsay and therefore potentially admissible. Second, none of the statements are admissible under the present sense impression exception because none describe an event that Ms. Lentz is perceiving while it is taking place, or immediately thereafter. The only indication that concurrent activity may have been taking place is Defendant's stalking of Ms. Lentz. However, the Court will not admit such statement under this exception because the Government provides no context concern-

ing a particular material event involving stalking that is connected to this statement. Third, the Court also declines to admit Ms. Lentz's statement that Defendant was stalking her under the state of mind exception because the Government provides no context concerning a particular material event involving stalking that is connected to this statement. Fourth, the various double hearsay statements are inadmissible under the state of mind exception because they merely report on past events and do not exemplify any proffered state of mind that Ms. Lentz may have had at the time of the incidents. Moreover, this Court excludes Ms. Lentz's recollections of Defendant's references to OJ Simpson under Rule 403 because any probative value it could provide would be substantially outweighed by the unfair prejudice to Defendant. *See* discussion *infra* Part III.A. Fifth, Ms. Lentz's statements that she was scared of Defendant are admissible under the state of mind exception to the hearsay rule to the extent they do not comment on the actions surrounding the reasons why she was scared.

### c. Ann Sarkes

The Government seeks to introduce hearsay testimony from Ann Sarkes under the state of mind exception to the hearsay rule recalling Ms. Lentz saying that "if she ever turned up dead—tell police Jay did it." For the same reasons as stated above for excluding Ruth Colvin's identical statement, this Court excludes such statement under Rule 403 because any probative value such statement could provide would be cumulative and substantially outweighed

by the unfair prejudice to Defendant. *See* discussion *infra* Part III.A.

### d. Tim O'Brien

The Government seeks to introduce hearsay testimony from Tim O'Brien, Ms. Lentz's boyfriend, under the state of mind exception to the hearsay rule. In particular, the Government seeks to introduce double hearsay statements that Ms. Lentz said Defendant would threaten her and that Defendant told Ms. Lentz that the incident in the O.J. Simpson trial could happen again. The Government also seeks to introduce statements that Ms. Lentz was concerned that Defendant would kill her, was visibly upset about Defendant's altercation with their daughter's daycare, was relieved that Defendant's garnishment was put in place, and was scared that Defendant would use their daughter, and her relationship with Mr. O'Brien, as leverage.[2]

With respect to each statement the Court holds as follows. First, Mr. O'Brien may testify as to any interactions that he observed between Defendant and Ms. Lentz as long as he was physically present when the altercation occurred. For example, if Mr. O'Brien observed or heard Defendant either place harassing phone calls or engage in intimidating acts toward Ms. Lentz, then these observations would be admissible. Second, statements about Ms. Lentz's being relieved about the garnishment, and being fearful, scared, and concerned that Defendant would kill her are emotions that would be admissible under the state of mind exception to the hearsay rule because they show Ms. Lentz's state

2. The Government also makes various statements of facts regarding Mr. O'Brien's awareness that Ms. Lentz was taping calls and Defendant's use of support checks to intimidate Ms. Lentz. From the submissions it is unclear how Mr. O'Brien learned of these facts. If they were derived from his direct observation or through statements he overheard of Defendant then they would be admissible as non-hearsay. However, if Mr. O'Brien merely knows these facts because of statements that Ms. Lentz made to him then they would suffer the same infirmities as the remainder of his assertions.

of her emotions at that time. Nonetheless, the past acts that caused such emotions are inadmissible because they would be mere recitations of past factual occurrences. Third, the double hearsay statements by Ms. Lentz that Defendant threatened her and made references to O.J. Simpson are inadmissible to show Ms. Lentz's fear of Defendant because they do not show Ms. Lentz's state of mind at the time the threats took place. The admission of such statements is an impermissible attempt to prove as true that the threats actually did take place. Moveover, this Court excludes Ms. Lentz's recollections of Defendant's references to OJ Simpson under Rule 403 because any probative value it could provide would be substantially outweighed by the prejudice to Defendant. *See* discussion *infra* Part III.A.

### e. George Stevens

The Government seeks to introduce hearsay testimony from George Stevens, fellow choir member of Ms. Lentz, under the state of mind exception to the hearsay rule. In particular, the Government seeks to introduce Ms. Lentz's statements that Defendant had threatened her in the past, and that she asked Mr. Stevens to accompany her to get her daughter from Defendant because she was afraid to go by herself. The Court holds that the statement that Defendant threatened Ms. Lentz in the past is inadmissible to show Ms. Lentz feared Defendant because it does not show Ms. Lentz's state of mind at the time the threats took place. However, Ms. Lentz's statement asking Mr. Stevens to go with her because of her fear is admissible under the state of mind exception to show Ms. Lentz feared Defendant at that time. Therefore, Mr. Stevens may testify that Ms. Lentz was afraid to go by herself to get her daughter from Defendant and asked him to accompany her to Defendant's home.

### f. Reverend Lauren Gough

The Government seeks to introduce hearsay testimony from Reverend Lauren Gough under the state of mind, excited utterance, and present sense impression exceptions to the hearsay rule. In particular, the Government seeks to introduce Ms. Lentz's 1995 statement that Defendant abused her and had threatened her over the phone on numerous occasions. The Government also seeks to introduce Reverend Gough's testimony that (a) Ms. Lentz asked her to be present at their home when Ms. Lentz told Defendant that she was leaving him, (b) Defendant stood up during a service and yelled out that Reverend Gough had broken up their marriage and he would not be able to see his child, and (c) Ms. Lentz was attending a different parish because she was afraid that Defendant would take their daughter from the nursery during the services. The Government further seeks to introduce double hearsay statements that Defendant told Ms. Lentz that "if O.J. can get away with it, so can I."

The Court holds as follows with respect to each statement. First, all of the statements Reverend Gough recalls from Ms. Lentz with respect to fear are inadmissible under the present sense impression and excited utterance exceptions because no indication exists that such statements were immediately connected to Ms. Lentz perceiving the actions described or that an excitable event just occurred. Second, Ms. Lentz's 1995 statement that Defendant abused and threatened her over the phone is inadmissible further under the state of mind exception to the hearsay rule because it does not show Ms. Lentz's state of mind at the time the events took place. Third, the statements that Ms. Lentz was attending a different parish because of her fear and that Ms. Lentz asked Reverend Gough to be present when she told Defendant

that she would be leaving him are admissible to show Ms. Lentz's fearful state of mind at that time. Fourth, the reference to OJ Simpson is inadmissible to show Ms. Lentz's fear of Defendant because it does not show Ms. Lentz's state of mind at the time the threat took place. Moreover, this Court excludes Ms. Lentz's recollections of Defendant's references to OJ Simpson under Rule 403 because any probative value it could provide would be outweighed by the prejudice to the defendant. *See* discussion *infra* Part III.A. Fifth, the observation by Reverend Gough that Defendant yelled out during a church service is potentially admissible because it is not hearsay. *See* FED. R. EVID. 801(d)(2). The fact that these parties were involved in a hotly contested divorce is well-known and *some* information about that subject will be admitted at trial. However, the alleged outburst by Defendant at church does not tend to prove or disprove the charges and to go into this incident will sidetrack the trial with extraneous matter surrounding their marital discord. Therefore, the Court excludes such statement under Rule 403 because any probative value it could provide is substantially outweighed by waste of time. *See* discussion *infra* Part III.A.

### g. Officer Chris Bibro

The Government seeks to introduce hearsay testimony from Officer Chris Bibro under the state of mind, excited utterance, and present sense impression exceptions to the hearsay rule stating that Defendant had been making harassing phone calls. In addition, the Government seeks to introduce a double hearsay statement that Defendant told Ms. Lentz that "OJ had the right idea." First, both statements recalled by Officer Bibro are inadmissible under the present sense impression and excited utterance exceptions because no indication exists that such statements were immediately connected to Ms. Lentz perceiving the actions described or that an excitable event just occurred. Second, the double hearsay reference that "OJ had the right idea" is inadmissible under the state of mind exception to show Ms. Lentz's fear of Defendant because it does not show Ms. Lentz's state of mind at the time the threat took place. Moreover, this Court excludes Ms. Lentz's recollections of Defendant's references to O.J. Simpson under Rule 403 because any probative value it could provide would be substantially outweighed by the unfair prejudice to the defendant. *See* discussion *infra* Part III.A.

### 3. April 1996 Plans

The Government seeks to admit several statements as non-hearsay or under the state of mind exceptions to the hearsay rule,[3] in order to show Ms. Lentz's beliefs and understandings regarding her daughter's travel plans and whereabouts in April 1996. Specifically, the Government seeks to introduce evidence concerning (1) the date when Ms. Lentz's daughter would travel to and from the Washington, D.C., area to visit Defendant's family in Indiana, (2) the date, time, and location when Defendant requested Ms. Lentz to be present to pick up their daughter, (3) whether and by whom their daughter would be accom-

---

**3.** The Chart produced by the Government also makes reference to admitting some of the statements under the excited utterance and present sense impression exceptions to the hearsay rule. The Court does not address these argument directly because in general there are no excitable events connected to the statements that Ms. Lentz was perceiving or just experienced. Moreover, the few statements where the present sense impression or excited utterance exceptions may apply, the Court shall admit such statements under the state of mind exception to the hearsay rule.

panied on the trip, and (4) the whereabouts of Defendant during the period of time that their daughter would be traveling.

To be admissible under the state of mind exception to the hearsay rule, the statement of Ms. Lentz's intention and belief itself must be a distinct and material fact in the chain of circumstances. *See, e.g., Hillmon,* 145 U.S. at 295, 12 S.Ct. 909. In this case, the Government's theory under Counts One and Two in the Indictment is that Ms. Lentz was inveigled and tricked into going to Maryland to pick up her daughter. Thus, under this theory, the Government is required to show Ms. Lentz's state of mind and belief around the time of her disappearance. Accordingly, statements of intent and belief by Ms. Lentz surrounding the date of her disappearance are admissible under the state of mind exception to the hearsay rule to promote an inference that she did in fact engage in such conduct. *See, e.g., Jenkins,* 579 F.2d at 842–43 (intent); *Hairston,* 46 F.3d at 365 (belief). Each proffered witnesses' recollection of Ms. Lentz's statements about her intentions in April 1996 will be addressed in turn.

### a. Maureen McCloskey

The Government seeks to introduce hearsay testimony from Maureen McCloskey under the state of mind exception to the hearsay rule that on April 23, 1996, Ms. Lentz said that she would be late the next day because she had a court hearing and that she was going to pick her daughter up after work because her daughter was coming back that night. Both statements are admissible under the state of mind exception to the hearsay rule because they reflect Ms. Lentz's belief at that time that her daughter would be at Defendant's home in Maryland and her intention to go to Defendant's home to pick up her daughter.

### b. Bernice Butt

The Government seeks to introduce hearsay testimony from Bernice Butt, Ms. Lentz's mother, under the state of mind exception to the hearsay rule. In particular, the Government seeks to admit statements that Ms. Lentz told her that (a) Ms. Lentz's daughter called on April 23, 1996, and was very happy, (b) her daughter was coming home from her grandparents' home in Indiana, and (c) Ms. Lentz was going to get her daughter from Defendant's home. The Government seeks to further admit Ms. Butt's testimony that Ms. Lentz was wearing the aqua blouse that Ms. Butt made.

The Court responds as follows with respect to each statement. First, Ms. Lentz's communication to Ms. Butt that Ms. Lentz's daughter was happy is double hearsay and is inadmissible under the state of mind exception to the hearsay rule because it would not exemplify any intention or relevant belief of Ms. Lentz. Second, statements that Ms. Lentz's daughter was coming home and that Ms. Lentz was going to pick her up from Defendant's house in Maryland are admissible under the state of mind exception to the hearsay rule to reflect Ms. Lentz's belief at that time that her daughter would be at Defendant's home and her intention to go to Defendant's home to pick up her daughter. Third, if Ms. Butt personally observed Ms. Lentz wearing an aqua blouse then that testimony would be potentially admissible because it is not hearsay. If Ms. Butt did not see Ms. Lentz's attire that day, then such testimony would be hearsay and not admissible.

### c. Faye Osteen

The Government seeks to introduce hearsay testimony from Faye Osteen, Ms. Lentz's Aunt, under the state of mind exception to the hearsay rule stating

that Ms. Lentz talked about her and Defendant's plans to go to take their daughter to day care. Specifically, Ms. Osteen recalled Ms. Lentz stating that her daughter was coming home on Tuesday, April 23, 1996, and that she would have to go get her. The original plan was for Defendant to take their daughter to daycare on Wednesday morning before the court hearing; however, the Government seeks to introduce double hearsay testimony that Defendant said that he would not have the time. Ms. Lentz further stated that she just learned that Defendant had not even gone with their daughter to Indiana. In addition, Ms. Osteen seeks to testify that on April 23, 1996, Ms. Lentz called in the morning and Ms. Osteen told Ms. Lentz that she would help Ms. Lentz purchase a duplex.

■ The Court holds as follows with respect to each statement. First, statements regarding Ms. Lentz and Defendant's plans about taking their daughter to day care and statements about purchasing a duplex are admissible as non-hearsay to show that Ms. Lentz made plans beyond the date of her disappearance. Second, statements that Ms. Lentz's daughter was coming home that night and that Ms. Lentz had to get her daughter are admissible under the state of mind exception to the hearsay rule to reflect Ms. Lentz's belief at that time that her daughter would be at Defendant's home and Ms. Lentz's intention to go to Defendant's home to pick up her daughter. Third, statements by Ms. Lentz that Defendant had not gone with their daughter to Indiana are inadmissible under the state of mind exception to the hearsay rule because they do not reflect any relevant belief or intent regarding Ms. Lentz's future actions.

### d. Summer Keel

■ The Government seeks to introduce hearsay testimony from Summer Keel, Ms. Lentz's friend, under the state of mind exception to the hearsay. In particular, the Government seeks to introduce testimony that on April 22, 1996, Ms. Keel spoke to Ms. Lentz and (a) Ms. Lentz was excited about picking up her daughter the next night, (b) Ms. Lentz had thought that Defendant was traveling with their daughter, and (c) Ms. Lentz and Defendant were going to court to iron out the money issues.

The Court holds as follows with respect to each statement. First, Ms. Lentz's statement to Ms. Keel about picking her daughter up the following night is admissible under the state of mind exception to the hearsay rule because it shows Ms. Lentz's belief that her daughter was returning and her intention to go to pick her up. Second, Ms. Lentz's statements about ironing out money issues in court are admissible under the state of mind exception to the hearsay rule because it shows Ms. Lentz's intent to go to court in the future to resolve her divorce. Third, statements by Ms. Lentz that she thought Defendant was traveling with her daughter are inadmissible under the state of mind exception to the hearsay rule because they do not reflect any relevant belief or intent regarding Ms. Lentz's future actions.

### e. Mike Walker

■ The Government seeks to introduce hearsay testimony from Mike Walker, Ms. Lentz's friend, under the state of mind exception to the hearsay rule. In particular, the Government seeks to introduce statements that Ms. Lentz told Mr. Walker that her daughter was out of town visiting Defendant's mother in Indiana, Ms. Lentz would be picking her up at Defendant's home on Tuesday, April 23, 1996 after work, and that her boyfriend, Tim O'Brien, was out of town but would be back on Wednesday. The Gov-

ernment also seeks to introduce Ms. Lentz's statements that she thought the judge would rule against Defendant and in her favor, which would require Defendant to provide her with a fair amount of money, and Defendant would have to sell the house. The Government seeks to admit further testimony that Ms. Lentz looked at a house near Ms. Keel, Ms. Lentz stated that she might be able to look into buying a house, Ms. Lentz showed Mr. Walker the townhouse, and Ms. Lentz said that the townhouse would be great for her daughter. The Government also seeks to admit a statement that Ms. Lentz said she was going to try to find a job for Ms. Keel.

The Court holds as follows with respect to each statement. First, Mr. Walker viewing a townhouse with Ms. Lentz and Ms. Lentz's statement about purchasing a house are admissible as non-hearsay to show that Ms. Lentz's was making plans beyond the date of her disappearance. Second, Ms. Lentz's statement about picking up her daughter is admissible under the state of mind exception to the hearsay rule to reflect Ms. Lentz's intention to go to Defendant's home to pick up her daughter. Third, Ms. Lentz's statements regarding her boyfriend, Tim O'Brien, being out of town and Ms. Lentz's thoughts on how the judge would rule are inadmissible under the state of mind exception to the hearsay rule because they do not reflect any relevant belief or intent regarding Ms. Lentz's future actions.

### f. Jenn Rigger

 The Government seeks to introduce hearsay testimony from Jean Rigger, Ms. Lentz's friend, under the state of mind exception to the hearsay rule, as well as an admission by a party opponent. In particular, the Government seeks to introduce a statement by Ms. Rigger of a discussion that she over heard between Ms. Lentz and Defendant on April 16, 1996, about their daughter and plans for the trip

to Indiana. Afterward, Ms. Rigger and Ms. Lentz had a discussion about her daughter returning on April 23, 1996. In addition, the Government seeks to introduce testimony by Ms. Rigger that she spoke with Ms. Lentz on April 23, 1996, at work and Ms. Lentz stated that her daughter would be flying in that night, she was getting her daughter that night, and they would talk after work. The Government also seeks to introduce statements that they talked from 6:15pm to 6:55pm about work, Ms. Lentz's bid on a house that had been rejected, her learning from Defendant's stepfather that Defendant put their daughter on the flight by herself, and that she had to go and pick up her daughter and did not want to be late. The Government further seeks to introduce testimony that Ms. Lentz indicated that something about Defendant's voice was not right, which she felt Defendant wanted to tell her something but could not. Finally, the Government seeks to introduce testimony that Ms. Lentz talked about the court hearing the next morning and about how she was expecting to get more information about the hearing from her attorney at 9:00pm.

 The Court holds as follows with respect to each statement. First, any statements made by Defendant during the conversation between Ms. Lentz and Defendant that she overheard on April 23, 1996, are admissible against Defendant as an admission against one's interest. *See* FED. R. EVID. 801(d)(2). Second, Ms. Lentz's statements about picking up her daughter after work are admissible under the state of mind exception to the hearsay rule to reflect Ms. Lentz's intention to go to Defendant's home to pick up her daughter. Third, Ms. Lentz's statements about placing a bid on a house that had been rejected are admissible as non-hearsay to show that Ms. Lentz's was making plans

beyond the date of her disappearance. Fourth, Ms. Lentz's statements regarding Defendant's voice not being quite right and about her expecting to get more money after the court hearing are inadmissible under the state of mind exception to the hearsay rule because they do not reflect any relevant belief or intent regarding Ms. Lentz's future actions.

### g. Tim O'Brien

 The Government seeks to introduce hearsay testimony from Tim O'Brien, Ms. Lentz's boyfriend, under the state of mind exception to the hearsay rule. In particular, the Government seeks to introduce statements made by Ms. Lentz during the weekend of April 19–21, 1996, that Defendant let their daughter fly alone to Indiana, Ms. Lentz was upset because their daughter was only four years old, and that Ms. Lentz told him that she was happy that her daughter was coming home on Tuesday. The Court holds as follows with respect to each statement. First, Ms. Lentz's statement about being happy that her daughter was coming home on Tuesday is admissible under the state of mind exception to the hearsay rule to reflect Ms. Lentz's belief that her daughter was returning from Indiana. Second, Ms. Lentz's statement that Defendant let their daughter fly alone and the fact that Ms. Lentz was upset at that is inadmissible under the state of mind exception to the hearsay rule because it does not reflect any relevant belief or intent regarding Ms. Lentz's future actions.

### 4. Other Statements

The Government seeks to admit several written statements under the state of mind exception to the hearsay rule. In particular, the Government seeks to introduce Ms. Lentz's diary, journals, correspondence with her divorce attorney and with Defendant, interrogatories answers, and depositions taken in her divorce proceed-

ing. In order for these statements to be admissible under the state of mind exception to the hearsay rule, they must exemplify Ms. Lentz's state of mind at the time period referenced in the writing. As stated earlier, mere acts of Defendant cannot be admitted under this exception because Ms. Lentz would be recalling past factual occurrences and not the state of her emotions at the time. However, a statement of intent is admissible under the state of mind exception to promote an inference of the declarant's future conduct. *See Jenkins*, 579 F.2d at 842–43. Moreover, statements of emotions are admissible only to the extent that they show the declarant's state of mind and not the facts engendering such state of mind. *See Joe*, 8 F.3d at 1492. Each document will be addressed in turn.

### a. Ms. Lentz's Diaries

 The Government seeks to introduce Ms. Lentz's diary containing statements listing (1) when Defendant made harassing phone calls and was abusive, (2) when Defendant failed to pick up their daughter, and (3) references to her daughter's trip to Indiana from April 17th—23rd. (Gov't Mot. in Limine to Admit Out of Court Statements, Ex. 3.) This Court holds as follows with respect to each statement within Ms. Lentz's diary. First, statements that Defendant made harassing phone calls and was abusive are inadmissible because, in light of the hotly contested divorce proceeding, it is extremely plausible that Ms. Lentz had an opportunity to reflect and possibly fabricate or misrepresent her thoughts in her diary. Second, statements referencing Defendant's failure to pick up their daughter are inadmissible under the state of mind exception to the hearsay rule because they do not demonstrate any emotion or relevant feeling. Third, statements reflecting her daughter's trip to Indiana are admissible to show

Ms. Lentz's belief that her daughter was coming home from Indiana on April 23, 1996.

### b. Interrogatory Answers

■ The Government seeks to introduce Ms. Lentz's analysis of Defendant's interrogatory answers. (Gov't Mot. in Limine to Admit Out of Court Statements, Ex. 9.) For instance, the Government seeks to admit Ms. Lentz's observation that Defendant claimed additional debt, which was previously non-existent, in order to take money from the marital estate. This Court holds that such analysis of Defendant's interrogatory answers is inadmissible because it fails to reflect any relevant state of mind or emotion of Ms. Lentz with reference to her alleged murder and disappearance.

### c. Ms. Lentz's Journal

■ The Government's seeks to introduce Ms. Lentz's running journal of her interactions with Defendant, which includes a detailed description of her accounts of abuse by Defendant. (Gov't Mot. in Limine to Admit Out of Court Statements, Ex. 5–6.) The beginning of this journal states "History as near as can be remembered." (Gov't Mot. in Limine to Admit Out of Court Statements, Ex. 5.) This Court holds that documented statements recounting Defendant's alleged abuse are inadmissible under the state of mind exception to the hearsay rule because it merely reports on a past event and does not exemplify any state of mind that Ms. Lentz may have had at the time of the abuse. Therefore, Ms. Lentz's journal may not be introduced as testimony during trial.

### d. Ms. Lentz's Correspondences

■ The Government seeks to introduce various correspondence that Ms. Lentz had with Defendant and her divorce attorney regarding her divorce, issues with custody, and Defendant's abusive behavior. (Gov't Mot. in Limine to Admit Out of Court Statements, Ex. 7–8.) This Court holds that these correspondence do not reflect any relevant state of mind or emotion of Ms. Lentz in reference to the proceedings before this Court. Moreover, these statements are merely Ms. Lentz looking backward and describing a past memory or event or Ms. Lentz explaining what action she wishes to be taken in the future. Therefore, these correspondence are inadmissible hearsay and may not be admitted under the state of mind exception to the hearsay rule.

### e. Deposition Transcripts

■ The Government seeks to introduce excerpts of Ms. Lentz's February 19, 1996 deposition transcript under the state of mind exception to the hearsay rule and Rule 804(b)(1). (Gov't Mot. in Limine to Admit Out of Court Statements, Ex. 9.) In particular, the excerpts include (1) Ms. Lentz's account of Defendant's abusive behavior toward members of their daughter's day care center, (2) Ms. Lentz's accounts of telling others about Defendant's abusive behavior, (3) logs Ms. Lentz kept in reference to the days Defendant failed to pick up their daughter as scheduled, (4) reports to police of abuse and harassing phone calls, and (5) references to inappropriate behavior by Defendant in front of their daughter and references to their daughter's strep infection on her private parts after leaving Defendant's home.

This Court holds as follows with respect to the deposition transcript. In general, all of the deposition testimony would be admissible because Ms. Lentz is an unavailable declarant who provided this deposition testimony during her divorce proceeding and Defendant had an opportunity to cross examine her. *See* FED. R. EVID. 804(b)(1) (stating "testimony given as a

witness ... in a deposition taken in compliance with the law in the course of ... another proceeding, if the party against whom the testimony is now offered had an opportunity ... to develop the testimony ..." is not excludable under the hearsay rule if the declarant is unavailable). Nonetheless, the Court excludes Ms. Lentz's reference to Defendant's abusive behavior at their daughter's day care, logs of the days Defendant was scheduled to pick up their daughter, and references to their daughter's strep infection pursuant to Federal Rules of Evidence 401 and 403 because the statements are irrelevant and any probative value the statements could provide would be substantially outweighed by prejudice to Defendant. Therefore, the Government may introduce the deposition testimony of Ms. Lentz only with reference to Ms. Lentz's accounts of telling others about Defendant's abusive behavior and her reports to the police of abuse and harassing phone calls.

### C. ADMISSIBILITY OF STATEMENTS UNDER FED. R. EVID. 801, 804(b)(6), and 807.

The Government also seeks to admit all of Ms. Lentz's statements as either non-hearsay, *see* FED. R. EVID. 801, or under either the residual hearsay exception, *see* FED. R. EVID. 807, or the forfeiture by wrongdoing exception, *see* FED. R. EVID. 804(b)(6), to the hearsay rule. For the reasons stated below, none of these rules operate to admit any of the aforementioned statements.

### 1. NON–HEARSAY: Rule 801

The Government seeks to introduce most, if not all, of the statements as non-hearsay. A statement qualifies as non-hearsay if it is not offered into evidence to prove the truth of the matter asserted. *See* FED. R. EVID. 801(b). However, with the exception of those that have been duly noted above, the aforementioned statements would be irrelevant if they were admitted for a purpose other than to show the truth of the matter asserted therein. Therefore, to the extent that the Government seeks to admit the aforementioned statements as non-hearsay, the Court holds that, unless otherwise noted, the content of those statements shall be excluded as irrelevant.

### 2. RESIDUAL HEARSAY EXCEPTION: RULE 807

 The Government seeks to introduce all of the aforementioned statements under the residual hearsay exception. The residual hearsay rule is a catchall provision to allow the admission of statements that do not fall within a specific hearsay exception, yet carry equivalent guarantees of trustworthiness. *See United States v. Dunford*, 148 F.3d 385, 393 (4th Cir.1998). A court should consider six factors to determine whether a statement has such equivalent guarantees: (1) the unavailability of the declarant; (2) the circumstantial guarantees of trustworthiness surrounding the statement; (3) whether the statement relates to a material fact; (4) whether the statement is the most probative evidence on the point; (5) whether the interest of justice is served by the statement's admittance; and (6) whether the opposing party has been given reasonable notice that the statement is being sought for admittance. *See United States v. Shaw*, 69 F.3d 1249, 1253 (4th Cir.1995).

 None of the aforementioned excluded statements of Ms. Lentz are admissible under the residual hearsay exception because they *do not engender circumstantial* guarantees of trustworthiness nor is the interest of justice served by admitting the statements. In particular, the circumstances of many of these statements were within the context of a drawn out and

bitter divorce. Immense animosity existed between the parties, which in turn provides sufficient cause for concern about fabrication and amplified perceptions by one spouse about the negative actions of the other. No independent indicia of reliability or trustworthiness is present that would serve the interest of justice to admit Ms. Lentz's uncross-examined statements or documented accounts. If such statements were admitted, Defendant has no opportunity to cross-examine these statements and the jury has no way to weigh the reliability of the statements. Therefore, the Court will not apply the residual hearsay exception to allow in Ms. Lentz's statements.

### 3. FORFEITURE BY WRONGDOING EXCEPTION: RULE 804(B)(6)

■ The Government seeks to introduce all of the aforementioned statements under the forfeiture by wrongdoing exception to the hearsay rule. Every defendant has a Sixth Amendment Right to confront the witness who testifies against him. *See Ohio v. Roberts,* 448 U.S. 56, 62, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). However, under the forfeiture by wrongdoing exception, if the accused wrongfully procures the silence of a witness through threats, actual violence, or murder, the statements of the witness may be admitted against him. *See United States v. Dhinsa,* 243 F.3d 635, 651 (2d. Cir.2001); *United States v. Cherry,* 217 F.3d 811, 814–15 (10th Cir.2000); *United States v. Emery,* 186 F.3d 921, 926 (8th Cir.1999). The crux of all these cases remains the same: the defendant procured the unavailability of the declarant as a witness to the alleged crime by the defendant against a third party. In essence, the defendant arranged for a potential witness to be killed to prevent that witness from testifying in a future or ongoing proceeding against the defendant.

The Government argues that the forfeiture by wrongdoing exception applies to all statements by Ms. Lentz, the victim, because Defendant procured the unavailability of Ms. Lentz by killing her. The Government moves the Court to hold a pretrial evidentiary hearing to determine by a preponderance of the evidence whether Defendant killed Ms. Lentz, then if the Court finds so the Government could admit such evidence in its case in chief to prove to the jury that Defendant killed Ms. Lentz beyond a reasonable doubt. In the alternative, the Government argues that the Court should allow the evidence to be conditionally admitted, and defer the ultimate ruling until sometime during trial.

■ Essentially, the Government asks the Court to find Defendant guilty of killing Ms. Lentz by a preponderance of the evidence in order to allow the evidence to be admitted to prove Defendant killed Ms. Lentz beyond a reasonable doubt. No case cited by the Government stands for this proposition. In this case for which Defendant is being tried under well settled Constitutional principles, Defendant is presumed to be innocent until proven guilty. To hold otherwise would be to deprive a defendant of his right to a jury trial and allow for a judge to preliminarily convict a defendant of the crime on which he was charged. This Court is unwilling to extend the reasoning in Rule 804(b)(6) to allow in the testimony of a decedent victim for whose death a defendant is on trial.

The Government also argues that the forfeiture by wrongdoing exception may apply on the basis that Defendant killed Ms. Lentz to prevent her from testifying in the divorce proceeding. However, the divorce proceeding is not the proceeding that will be before this Court. Defendant is on trial for the kidnaping and murder of Doris Lentz. Ms. Lentz would not be testifying in this case if she were available

because Defendant could not have been charged with such offense. Therefore, statements made by Ms. Lentz to others are inadmissible under the forfeiture by wrongdoing exception to the hearsay rule.

## D. CONCLUSION ON HEARSAY

In general, the Court holds as follows with respect to the Government's Motion in Limine to Admit Out of Court Statements by Doris Lentz. First, none of the proffered hearsay statements by Ms. Lentz are admissible to show prior abuse because such statements are merely reports by Ms. Lentz on past events. Second, the proffered hearsay statements showing fear of Defendant are admissible under the state of mind exception to the hearsay rule to show Ms. Lentz's emotions as long as the declaration reflects the state of mind during the time in question *and not the factual occurrence engendering that state of mind.* The remaining statements with respect to fear are inadmissible.

Third, most of Ms. Lentz's statements of intent and belief surrounding her plans on the date of her disappearance are admissible under the state of mind exception to the hearsay rule because they permit an inference that she did in fact engage in such conduct. The remaining statements listed by the Government as April Plans are inadmissible. Fourth, the only documented statement produced and referenced by the Government that is admissible is Ms. Lentz's deposition testimony referencing her accounts of telling the police and others about Defendant's abusive behavior and harassing phone calls. The remaining documents are inadmissible because they either do not reflect any relevant state or mind or their probative value is substantially outweighed by prejudice to Defendant.

Finally, the Court declines to apply the residual hearsay and forfeiture of wrong-doing exceptions to the hearsay rule because no independent indicia of reliability or trustworthiness is present that would serve the interest of justice to admit Ms. Lentz's statements or documented accounts and the forfeiture of wrongdoing exception has never been applied to admit testimony of a decedent victim for whose death a defendant is on trial.

## III. PRIOR BAD ACTS UNDER RULE 404(b)

The Government also seeks to introduce evidence of the Defendant's alleged prior bad acts under Rule 404(b) of the Federal Rules of Civil Procedure. The evidence relating to Defendant's prior bad acts falls under three general categories. First, the Government seeks to introduce evidence of Defendant's alleged prior abuse of Ms. Lentz. Second, the Government seeks to admit evidence of Defendant's alleged prior misconduct toward persons associated with Ms. Lentz, such as the staff at their daughter's day care center the Busy Bee Day Care Center. Third, the Government seeks to introduce evidence of Defendant's alleged abuse of other women before and after the charged offenses. Each category is addressed in turn below.

### A. Standard and Applicable Law

The admissibility of evidence of prior bad acts hinges on the interplay between Rules 401, 403 and 404(b) of the Federal Rules of Evidence. Any evidence that tends to make the existence of a fact of consequence to an issue in the case "more probable or less probable" than without the evidence is relevant and is therefore admissible. *See* FED. R. EVID. 401, 402. Relevant evidence may be excluded, however, if its probative value is "substantially outweighed" by the potential for undue prejudice, confusion, delay or redundancy. *See* FED. R. EVID. 403. Rule 404(b) incorporates both of these basic propositions

into the determination of admissibility of prior crimes, wrongs or acts. *See generally* CHARLES E. WAGNER, 1 FEDERAL RULES OF EVIDENCE CASE LAW COMMENTARY 410–12 (2001–2002 ed.)

Specifically, Rule 404(b) provides that evidence of prior crimes, wrongs or acts is admissible except when it is offered to prove "the character of a person in order to show action in conformity therewith." *See* FED. R. EVID. 404(b). The Fourth Circuit interprets the rule to be one of inclusion. *See United States v. Queen,* 132 F.3d 991, 993 (4th Cir.1997). Rule 404(b) explicitly permits evidence of prior bad acts for purposes other than character, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

Rule 404(b) essentially aims to ensure that "defendants not be convicted simply for possessing bad character." *Queen,* 132 F.3d at 995 (citing *Michelson v. United States,* 335 U.S. 469, 475–76, 69 S.Ct. 213, 93 L.Ed. 168 (1948); WIGMORE ON EVIDENCE, § 58.2 at 1215 (Tillers rev.1983)). The rule "protects against juries trying defendants for prior acts rather than charged acts, and guards against juries becoming confused by the purpose of the admitted acts and using the acts improperly in arriving at the verdict." *Queen,* 132 F.3d at 996 (citations omitted). Rule 404(b) further prevents the defendant from facing at trial the near impossible task of defending himself against "prior acts from the span of one's entire lifetime" rather than the acts alleged in the indictment. *Id.*

▬▬▬ The Fourth Circuit has developed a four prong test to protect against the principal dangers Rule 404(b) is intended to address. *See id.* at 995 (citations omitted).

> [E]vidence of prior acts becomes admissible under Rules 404(b) and 403 if it meets the following criteria: (1) The

evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*Queen,* 132 F.3d at 997. This Circuit has also drawn a distinction between "extrinsic" and "intrinsic" acts. Acts that are intrinsic to the charged offense do not fall under the limitations of Rule 404(b). *See United States v. Chin,* 83 F.3d 83, 87 (4th Cir.1996). "Other criminal acts are intrinsic when they are [1] inextricably intertwined or [2] both acts are part of a single criminal episode or [3] the other acts were necessary preliminaries to the crime charged." *Id.* at 88 (citations and internal quotations omitted).

## B. Evidence of Alleged Prior Abuse of Ms. Lentz.

The Government seeks to introduce evidence that the Defendant verbally and physically abused and threatened Ms. Lentz. The Government argues that such evidence is highly relevant and "intrinsic" to the charged offenses and therefore need only satisfy the requirements of Rules 401 and 403. If the Court were to review this evidence under Rule 404(b), the Government argues that it is admissible because the evidence demonstrates Defendant's intent, motive, plan, and lack of mistake. In contrast, Defendant argues that much of the evidence of alleged prior abuse has

more to do with the Lentz's divorce proceedings than what took place in April 1996. According to the Defendant, admitting such evidence is tantamount to impermissible character assassination and would degenerate the trial into a series of mini-trials concerning the divorce.

As discussed below, the Court first finds that evidence of prior abuse is extrinsic to the charged offenses and accordingly can only be admitted under Rule 404(b). Second, applying the four part test adopted by the Fourth Circuit in *Queen*, 132 F.3d at 993, the Court holds that most, but not all, of the proffered evidence of alleged prior abuse is inadmissible.

### 1. Intrinsic v. Extrinsic.

■ The Court first turns to the issue of whether evidence of Defendant's alleged prior abuse of Ms. Lentz is intrinsic to the charged offenses. Defendant is accused of: (1) kidnaping, *i.e.*, luring Ms. Lentz across state lines and causing her death, and (2) interstate domestic violence, *i.e.*, causing Ms. Lentz to travel across state lines by force or coercion with the intent to commit a crime of violence injuring Ms. Lentz. The Government argues that the incidents of verbal and physical abuse "set the stage" for these offenses showing the relationship between the Defendant and his ex-wife.

The allege prior abuse is not intrinsic to the charged offenses in this case. To be considered "intrinsic" to the charged offenses, the acts must be "[1] inextricably intertwined or [2] both acts are part of a single criminal episode or [3] the other acts were necessary preliminaries to the crime charged." *Chin*, 83 F.3d at 88 (citations and internal quotations omitted). Evidence of shoving, throwing objects, or physical altercations arising from arguments with Ms. Lentz in 1990, 1991, 1994 and 1995, are simply not "inextricably intertwined" with the act of luring Ms. Lentz

across state lines to cause her death in April 1996. The criminal act stands alone without any of these prior incidents of alleged abuse. For instance, throwing a bottle of cornstarch at Ms. Lentz in 1991 has nothing to do with planning or actual execution of enticing her to cross state lines to meet her death five years later. Similarly, these alleged acts of prior abuse are not part of the "single criminal episode" at issue in this case. Whether Defendant threw Ms. Lentz down a hill in November 1994 played no role in his planning and executing her kidnaping two years later.

This is not a case where the Government seeks to introduce testimony of other acts made in furtherance or during the execution of the charged crime, *e.g.*, statements regarding a murder uttered during the drug deal at issue. *See Chin*, 83 F.3d at 88 (finding that statements made concerning uncharged murder during exchange of heroin for cash was intrinsic part of drug trafficking charge). Rather, most of the evidence the Government seeks to admit are acts outside the temporal scope and breadth of the charged offenses.

Neither are the acts in question "necessary preliminaries to the crime charged." *Id.* The Government's sole support for the proposition that Defendant's alleged acts of prior abuse are intrinsic evidence is an unpublished Fourth Circuit decision, *United States v. Price*, 1998 WL 390572, *5 (4th Cir.1998) (finding that defendant's prior 1994 conviction of assault against ex-wife was intrinsic to 1995 mail threats). Although the *Price* case may be of arguable persuasive value, unpublished decisions like *Price* are not binding precedent under Rule 36(c) of the Local Rules for the Fourth Circuit.

Putting aside the precedential weight of *Price*, the case is distinguishable on the facts. *Price* addressed a situation where

the defendant had been previously convicted of physical assault and six months later was writing threatening letters to the victim. Further, contrary to *Price,* the other cases the Government cites to support admissibility of prior bad acts in a husband/wife defendant/victim scenario all inherently found the acts to be *extrinsic* to the charged offense, rather than intrinsic. *See United States v. Russell,* 971 F.2d 1098, 1107(4th Cir.1992) (considering evidence of defendant's extramarital affairs and general physical abusive treatment of the victim under Rule 404(b)); *Government of Virgin Islands v. Harris,* 938 F.2d 401, 420 (3d Cir.1991) (reviewing evidence of defendant's prior strangulation attempt of his wife under Rule 404(b)); *United States v. Joe,* 8 F.3d 1488, 1495–96 (10th Cir.1993) (considering admission of rape statement to physician under Rule 404(b)). *Price* appears to be more an anomaly than the rule.

Finally, the Court is wary of extending the definition of "intrinsic" acts to cover incidents in this case that merely "set the stage" for the charged offense as the Government contends.[4] As the D.C. Circuit warned in *United States v. Bowie,* "'the complete the story' definition of 'inextricably intertwined' threatens to override Rule 404(b)." 232 F.3d 923, 928 (D.C.Cir.2000). *See also United States v. Hardy,* 228 F.3d 745, 750 (6th Cir.2000) (allowing general exception for "background circumstances" would allow exception that swallows the

rule). "[A]ll relevant prosecution evidence explains the crime or completes the story. The fact that omitting some evidence would render a story slightly less complete cannot justify circumventing Rule 404(b) altogether." *Bowie,* 232 F.3d at 929. Here, the Government does not present a persuasive case to "relieve [it] ... from the obligation of selecting from a myriad of non-propensity purposes available to complete" its story of the case. *Id.* In sum, the Court holds that evidence of Defendant's prior abuse of Ms. Lentz is extrinsic to the charged offenses and the Court will review their admissibility under the rubric of Rule 404(b).

## 2. Application of Queen Test to Alleged Acts of Prior Abuse.

As indicated above, the Fourth Circuit applies a four prong test to determine the admissibility of evidence under Rule 404(b). Stripped to its essence, the test demands that the evidence is: (1) relevant, (2) probative of an essential claim or element of the offense, (3) reliable, and (4) not substantially outweighed by any unfair prejudice to the Defendant. *See Queen,* 132 F.3d at 996. The Government seeks to admit evidence of alleged acts of abuse from June 1990 to August 1991, incidents from November 1994 to the fall of 1995, and harassing phone calls and verbal threats spanning from 1991 to 1996. Each set of acts is addressed in turn within the parameters of the *Queen* test.

---

**4.** The Government suggests that *United States v. Kennedy* supports the broad proposition that any evidence that "completes the story" or "sets the stage" for the charged offense is intrinsic. 32 F.3d 876 (4th Cir.1994). *Kennedy* does not so hold. In *Kennedy,* the court explained that "evidence of uncharged conduct is not considered 'other crimes' evidence if it 'arose out of the same ... series of transactions as the charged offense, ... or if it is *necessary* to complete the story of the crime (on) trial.' " *Id.* at 885 (citations omitted) (emphasis added). In *Kennedy,* the court

found that testimony from an FBI agent concerning the defendant's drug dealing ring in the year leading up to the charged narcotics offenses was intrinsic to the crimes alleged in the indictment. *See id.* at 885–86. The evidence addressed the defendant's "source for cocaine that he supplied to [his co-defendant] during the charged conspiracy period [and] ... served as evidence of a subset of the charged conspiracy ...." *Id.* In other words, evidence of the defendant's own distribution network did more than set the stage, it was a necessary preliminary to the crimes charged.

### a. Allegations of abuse from June 1990 to August 1991.

▮ The Court first turns to a series of incidents of alleged abuse that occurred in 1990 to 1991. Specifically, the Government seeks to admit allegations (allegations that the Defendant vehemently denies) of: (1) a June 4, 1990, incident where Defendant shoved Ms. Lentz into a door jamb; (2) a September 2, 1990, incident where Defendant struck Ms. Lentz on the arm; (3) an August 15, 1991, incident where Defendant threw a bottle of cornstarch at Ms. Lentz; and (4) an August 16, 1991, altercation where Ms. Lentz sustained bruises and swelling on arms and legs.

Of these four acts, the June 4, 1990, and August 15, 1991, incidents are inadmissible.[5] First, the relevance of these acts to the Defendant's state of mind and motive six years later in kidnaping his ex-wife is highly questionable. The acts of shoving his ex-wife into a door jamb or throwing a bottle of corn starch at her, are a far cry, physically and mentally, to the act of tricking her to cross state lines with the intent to cause her death. *See Queen,* 132 F.3d at 996 ("the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes."). The former are the result of heat of the moment domestic spats, while the latter entails planning and premeditation leading to murder. Contrary to the Government's assertions, this is not a case like *Harris,* 938 F.2d 401, where the act preceding the murder was the defendant's attempted strangulation of the victim, *or Joe,* 8 F.3d 1488, where the prior act defendant's uncharged rape of the victim.[6]

Further, any probative value that evidence of Defendant slamming a door or throwing a bottle of cornstarch at the victim six years prior to the charged offenses is substantially outweighed by the unfair prejudice against the Defendant. Unfair prejudice enters the calculation when the evidence has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Queen,* 132 F.3d at 994 (citations omitted). Here, the evidence represents one-sided accounts of martial disputes that paint the Defendant in a very poor light and have little to no relevance to the charged offenses. There is a strong likelihood that the jury may be swayed by impermissible considerations such as the Defendant's overall negative disposition through acts that have only the most tenu-

---

5. As a threshold point, as discussed above, these statements are also inadmissible hearsay. *See* discussion *supra* Part II.B.1. The analysis in this section serves to provide another basis for their exclusion. Further, the fact that the statements are hearsay lends further support to the conclusion that the statements are unreliable.

6. Contrary to the Government's contentions, this case is not similar to *Russell,* 971 F.2d 1098. First, the appellate court reviewed whether admissibility of the defendant's extramarital affairs was properly admissible under Rule 404(b) not the evidence of abuse. *See id.* at 1107. The court noted that when considered with the evidence of abusive treatment of the victim, the evidence of extramarital affairs bore directly on Russell's intent and motive. *See id.* Second, the evidence of abuse in *Russell*—beating the victim—was more egregious than slamming a door or throwing cornstarch. Finally, the evidentiary foundation in *Russell* appears to be more reliable than in the instant case. In *Russell,* a witness testified at trial that Russell had told the witness that Russell had hit the victim a couple of times. *See id.* at 1100 n. 2. Here, the Government does not indicate precisely how it will introduce the door slamming and corn starch incidents. It appears, however, that *the incidents would be introduced through* the testimony of Bernice Butt or the victim's diary. This testimony is inadmissible hearsay. *See* discussion *supra* Part II.B.1 & 4. Thus, providing another ground for exclusion.

ous relation to the charged offense. Further, the evidence is cumulative because the Government has other evidence supporting Defendant's intent more probative than these incidents. Because the June 4, 1990, door shoving and August 15, 1991, corn starch bottle incidents fail the four part *Queen* test, the evidence is inadmissible under Rules 404(b) and 403.

 The Court reaches a different conclusion with respect to the evidence of alleged abuse on September 2, 1990, where Defendant allegedly struck Ms. Lentz on the arm, as well as the August 16, 1991, altercation where Ms. Lentz allegedly sustained bruises and swelling on her arms and legs from abuse. Reliable evidence of the Defendant physically beating Ms. Lentz is relevant to the Defendant's motive and intent and capacity to do serious physical harm to the victim. *See Joe,* 8 F.3d at 1495–96 (evidence of prior uncharged rape of victim highly probative of intent to commit acts of violence). The evidence also satisfies the second prong of *Queen* because it is probative of the essential claims of motive and intent. However, evidence of spousal abuse is inherently highly charged and by its nature creates the danger of unduly exciting the emotion of the jury. *See United States v. Hands,* 184 F.3d 1322, 1328–29 (11th Cir.1999)(explaining that spousal abuse falls into the category of extrinsic acts that require careful consideration under Rule 403 because it is "likely to incite a jury to an irrational decision.") (citations omitted). Therefore, assessing the probative value vis-a-vis the prejudicial effect, the reliability of the evidence, the third prong of the *Queen* test, is crucial.

To the extent the Government seeks to introduce the August 16, 1991, incident of alleged abuse through the testimony of Laura Stewart and Ruth Colvin *observing* the bruises and swelling on Ms. Lentz's arms and legs, and photographs Ms. Stewart took of such alleged abuse, the evidence is reliable.[7] Because the evidence of the August 16, 1991, incident of abuse is relevant, probative of an essential claim, and reliable, the Court finds that the probative value substantially outweighs any prejudice against the Defendant. Accordingly, testimony of witnesses Laura Stewart and Ruth Colvin that they observed Ms. Lentz after the August 16, 1991, incident and observed bruises, is admissible under Rules 404(b) and 403.

It is unclear how the Government plans to introduce the September 2, 1990, incident where the Defendant struck Ms. Lentz on the arm. Unless this act is supported by strong objective evidence such as a photograph or testimony from a witness who observed bruises on Ms. Lentz's arm resulting from the abuse, the evidence is unreliable and its probative value is outweighed by the substantial unfair prejudice against the Defendant. Accordingly, the September 2, 1990 incident is inadmissible under Rule 404(b), as well as Rule 403, unless the evidence is introduced in the manner described above.

### b. Alleged acts of abuse from November 1994 to December 1995.

The next set of alleged acts of abuse or threatening behavior are a series of incidences ranging from November 1994 to late 1995. Specifically, the Government seeks to introduce allegations which the Defendant denies that: (1) a November 2, 1994, incident where Defendant threw Ms. Lentz down a hill; (2) a June 1, 1995,

---

7. Testimony by Ms. Stewart and Ms. Colvin explaining the circumstances of the August 16, 1991, incident as described to them by Ms. Lentz is inadmissible hearsay. *See* discussion *supra* Part II.B.1. Likewise the August 17, 1991, police report concerning the incident is excluded as hearsay. *See id. supra* Part II.B.1.h.

incident where Defendant yelled at Ms. Lentz and threw shoes at her; (3) an incident in the fall of 1995 where Defendant allegedly slashed Ms. Lentz's tires; (4) incidents of undetermined dates in which the Defendant allegedly beat Ms. Lentz, blackened her eyes and broke her ribs; and (5) a December 14, 1995, incident where Defendant refused to return the couple's child to Ms. Lentz until she paid a late fee of the day care center.

As a threshold matter, the November 2, 1994, June 1, 1995, and December 14, 1995, alleged acts are inadmissible because the Government has not proffered a proper foundation for this evidence. It appears that these acts are to be introduced through the November 4, 1994, June 2, 1995, and December 14, 1995, police reports. As discussed above, these statements are all inadmissible hearsay. *See* discussion *supra* Part II.B.1.f.

Even if the evidence fell under a hearsay exception, the November 2, 1994, and June 1, 1995, incidents would be inadmissible under a Rule 404(b) analysis as well. First, the context of these acts indicates that their relevance is minimal at best. With respect to the hill incident of November 2, 1994, police reports indicate that Defendant removed Ms. Lentz from his home after he alleges that she entered his home without permission to pick up their daughter, and then the Defendant forcibly escorted her out and threw her down the hill in front of his home. Physically removing his estranged wife out of his home is not very similar, physically or mentally, to the act of tricking the victim to cross state lines with the intent to cause her death. *See Queen,* 132 F.3d at 996. This is not a case like *Harris,* where the act preceding the murder was the defendant's

attempted strangulation of the victim, or *Joe,* where the act preceding the murder was defendant's uncharged rape of the victim. Evidence of Defendant yelling and throwing shoes at Ms. Lentz on June 1, 1995, is even less probative of the charged offenses.

Further, any probative value this evidence has toward Defendant's intent or motive, is substantially outweighed by the risk of unfair prejudice against the Defendant. A fair reading of the November 4, 1995, and June 1, 1995, incidents indicate that they are being offered simply to paint the Defendant in a bad light. The evidence presents the risk that the jury would subordinate reason to emotion and impermissibly consider the Defendant's ill disposition in its deliberations, an issue which does not bear on the events of April 1996. Accordingly, the November 4, 1994, incident where Defendant allegedly threw Ms. Lentz down the hill in front of his house, and the June 1, 1995, incident where Defendant allegedly yelled at Ms. Lentz and threw shoes at her, are inadmissible for the additional grounds that they do not pass muster under Rules 404(b) and 403.

 Similarly, the fall 1995 alleged tire slashing is inadmissible as well. Although such evidence is relevant to the Defendant's state of mind and intent, and is reasonably close in time to the charged offenses, it fails the third prong of the *Queen* test—reliability. In open court, the Government clarified that it would introduce the tire slashing through a third party to whom Ms. Lentz had relayed that at some point in the fall of 1995 the Defendant had slashed her tires. First, the statement is hearsay and fails to fall under any exception.[8] Second, the reliability of

---

8. Judging from the Government's proffer in open court, Ms. Lentz's comment is an out-of-court statement being offered for the truth of the matter asserted. The statement does not

fall under any of the exceptions outlined above. *See* discussion *supra* Part II.A. The statement is not an excited utterance, nor

the evidence is further suspect because Ms. Lentz did not tell the third party that she had seen the Defendant slash her tires. Ms. Lentz stated that she suspected that the Defendant had slashed her tires because the tires were slashed after a court hearing in the parties' divorce proceeding. In addition to being unreliable, any probative value would be outweighed by substantial unfair prejudice to the Defendant. Therefore, evidence of the allegation that Defendant slashed Ms. Lentz's tires is inadmissible under Rules 404(b) and 403.

■ However, testimony of witnesses who observed Ms. Lentz's black eyes and broken ribs are admissible. Evidence that the Defendant physically beat Ms. Lentz resulting in black eyes and broken ribs is highly relevant to Defendant's motive, state of mind, and lack of mistake. *See, e.g., Virgin Islands,* 938 F.2d 401 (prior attempted strangulation of victim probative of defendant's intent, motive and lack of mistake, concerning victim's murder). The relevance of these acts of abuse are buttressed by the fact they appear to have occurred in the fall of 1995 relatively close in time to the charged offenses of April 1996. Contrary to unintentional physical acts stemming from highly charged domestic spats, intentional acts of serious physical abuse are similar, in physical and mental terms, to the act of physically causing Ms. Lentz's death after luring her across state lines.

Second, such evidence is necessary in the sense that it is probative of the essential claims of Defendant's motive, state of mind, and lack of mistake. The evidence

is also sufficiently reliable because it appears that the Government will introduce the evidence through Ann Sarkes, and possibly Ruth Colvin, who personally observed Ms. Lentz's condition. To the extent that these witnesses will testify that they *observed* Ms. Lentz blackened eyes and broken ribs, the evidence is sufficiently reliable to meet the requirements of Rule 404(b).[9] The high probative value of such testimony is not substantially outweighed by any unfair prejudice against the Defendant.

### c. Alleged harassing phone calls and threats made by Defendant to Ms. Lentz from 1991 to 1996.

The Court finally turns to threats and harassing statements the Defendant allegedly made toward Ms. Lentz. The Government specifically seeks to introduce evidence of allegedly: (1) harassing phone calls made by Defendant to Ms. Lentz at her apartment in Arlington, Virginia between 1991 and 1996; and (2) threats made to Ms. Lentz by the Defendant, including (a) "he would get her and there won't be a body," (b) "O.J. Simpson had the right idea," (c) "Nicole and Ron Goldman got what they deserve," and (d) "if she brought up any evidence of physical abuse in court he would ram it down her throat."

■ The Government avers that it will introduce the phone calls via tapes made by the victim of the parties' conversations. The tapes have been provided to the defense. These phone calls are admissible under Rules 404(b) and 403 to the extent

present sense impression because no indication exists that Ms. Lentz made such statements while perceiving a startling event or immediately thereafter when she was still experiencing the excitement of the event. Nor is it admissible under the state of mind exception to the hearsay rule because the statement is a mere recitation of past facts.

9. As discussed above, much of Ms. Sarke's and Ms. Colvin's testimony is inadmissible hearsay. *See* discussion *supra* Part II.B.1. The scope of their admissible testimony is limited to what they observed and Ms. Lentz's statements of fear of the Defendant. Only the latter is admissible as evidence of Defendant's prior bad acts.

that they reveal Defendant's hostility toward Ms. Lentz after separation of the parties in 1991. Harassing phone calls bear upon the Defendant's motive and intent. Such evidence goes to necessary elements of the charged offenses such as state of mind, and is sufficiently reliable because it is being introduced via 30 hours of tape recorded conversations. The high probative value of such evidence is not substantially outweighed by any unfair prejudice to the Defendant. However, specific excerpts from the tape recordings will be subject to challenges of relevance at trial.

The same cannot be said of the identified highly charged threats the Government seeks to introduce. As a threshold matter, these statements are inadmissible hearsay. *See discussion supra Part II. B.2.g.* Assuming *arguendo* that these statements qualified under an applicable hearsay exception, they would still be inadmissible under Rules 404(b) and 403. Although statements such as "O.J. Simpson had the right idea" may be relevant to necessary elements of the charged offenses such as intent, the evidence is unfairly prejudicial to the Defendant. The probative value of these threats, especially the threats discussing the O.J. Simpson case, is substantially outweighed by the unfair highly prejudicial effect such statements would have on the jury's deliberation. Indeed, one would be hard pressed to find evidence more likely to excite the emotion of the jury and cause it to act irrationally than hearsay statements presented in a domestic kidnaping case laden with references to the infamous O.J. Simpson case. Accordingly, these statements are inadmissible under Rules 404(b) and 403.

## C. Evidence of Alleged Threats to Ms. Lentz's Friends and Acquaintances.

In addition to the alleged threats and abusive acts against Ms. Lentz, the Government seeks to introduce incidents of threats by the Defendant to friends and acquaintances of the victim. These alleged incidents include: (1) a 1993 threat by Defendant to a pastor counseling the Lentz's; (2) a 1994 incident where Defendant threatened Doug Henchen after he testified adversely to Defendant in the couple's divorce proceeding; and (3) incidents in May 1995 where Defendant threatened Ms. Melissa Byron and other staff members of the Busy Bee Day Care Center on several occasions and slashed the tires of Ms. Byron's van.

The Government argues that the Court should admit the evidence because it is probative of Defendant's intent and motive. The Defendant argues that these acts are inadmissible under Rule 404(b) because evidence of the Defendant's anger toward the pastor, Mr. Henchen, and staff members of the day care center is pure character evidence.[10]

10. The Government makes the preliminary argument that evidence of threats to the pastor, Mr. Henchen, and day care staff, is intrinsic to the charged offenses because they demonstrate Defendant's attitude and anger toward Ms. Lentz. The Government's argument that this evidence is intrinsic to the charged offenses is unpersuasive. There is no indication that these events are "inextricably intertwined" with the charged offenses or part of the same criminal episode. This case is about whether the Defendant kidnaped and caused the death of Ms. Lentz, not whether he was rude to the staff of the Busy Bee Day Care Center or yelled at his pastor. Accepting the Government's argument that Defendant's interaction with staff members at the day care center is part of a compelling story of hatred against Ms. Lentz would eviscerate Rule 404(b). *See Bowie*, 232 F.3d at 928. To the extent that such evidence is not hearsay, evidence of Defendant yelling at staff members of the Busy Bee Day Care and the Lentz's pastor, and threatening Mr. Henchen is extrinsic and subject to the limitations of Rule 404(b).

At the onset, most, if not all, of the evidence concerning the Defendant's alleged threats against the pastor, Mr. Henchen and the staff at the day care center, is inadmissible hearsay. *See* discussion *supra* Parts II.B.1 & 2. But even if the evidence were reviewed under Rule 404(b), it would still be inadmissible. Admitting such evidence would place the Defendant on trial for his allegedly poor behavior toward these actors. The evidence is irrelevant to any issue at trial. *Queen* instructs that the court should look to the similarity between the prior act and the act being proved. The more similar, the more relevant it becomes.

Here, the acts are not even directed at Ms. Lentz. Further, these acts, although rude and possibly obnoxious, have nothing to do with tricking Ms. Lentz to cross state lines with the intent to kill her. Second, the evidence is unnecessary in the sense that it is not probative of any essential claim or element of the crime in this case. Defendant's animosity toward staff members at the day care center, and isolated remarks to his pastor and Mr. Henchen, do not go to any essential issue, much less an element of the charged offense of kidnaping.

Finally, even if the evidence were somewhat probative of Defendant's animosity toward Ms. Lentz, it is substantially outweighed by the risk of unfair prejudice to the Defendant. The jury's judgment would surely be clouded by evidence that the Defendant hurled insults in front of children at the day care center, yelled at a pastor, and threatened a witness in the Lentz's divorce proceeding. In sum, this evidence raises the specter of being submitted for the sole purpose of demonstrating Defendant's bad character and propensity to conform therewith. Such evidence is therefore inadmissible under Rules 404(b) and 403, as well as 402.

### D. Evidence of Alleged Harassment of Ms. Lowe and Ms. Cherry.

 The final category of bad acts the Government seeks to admit are incidents of the Defendant allegedly stalking other women. These incidents include Defendant's alleged threats to Ms. Janice Cherry, a former girlfriend of the Defendant, where (1) Defendant threatened her in 1993; (2) Defendant harassed her at an officer's club in 1994 and was escorted out; (3) after Ms. Cherry's date with another man, the Defendant placed empty beer bottles under the other man's car in 1994; and (4) Defendant vandalized the car of a male friend parked in front of Ms. Cherry's residence in March/April 1994.

The Government also seeks to introduce alleged incidents of harassment involving Marylyn Lowe, another former girlfriend of the Defendant. These alleged events include: (1) a January 13, 2001, incident where Defendant caused Ms. Lowe to fall out of his truck while dropping her off; (2) a January 14–15, 2001, incident where Defendant attempted to burglarize a home he believed to be Ms. Lowe's; (3) a January 15, 2001, incident where Defendant parked his car in a parking lot across from Ms. Lowe's apartment to watch her; (4) a January 31, 2001, incident where Defendant left a phone message for Steve Halloway saying that Mr. Halloway was sleeping with Ms. Lowe; (5) a February 4, 2001, incident where Defendant called Mr. Halloway's wife; and (6) a February 14, 2001, incident where Defendant threw a brick through Bill Strum's window after obtaining Strum's name from a note in a bouquet of Valentine's day flowers Strum gave to Ms. Lowe.

The Government maintains that such evidence bears on the Defendant's state of mind over time. Defendant's aggression toward women in general, the Government argues, is relevant to the Defendant's ani-

mosity toward the victim. The Defendant contends that these acts are being offered solely as character and propensity attacks and are temporally distant in time from the charged offenses.

Evidence of Defendant's alleged prior harassment and stalking of other women is inadmissible under Rules 404(b) and 403. The *sine qua non* of impermissible character evidence is evidence introduced to demonstrate that the defendant has the propensity to commit the charged offense. *See* FED. R. EVID. 404(b). Here, that is precisely what the Government seeks to do. The evidence also poses the risk of mounting a trial within a trial, meaning that the defense would have to convince the jury that the Defendant did not stalk Ms. Cherry and Ms. Lowe. *See United States v. Gilbert,* 229 F.3d 15 (1st Cir.2000) (affirming district court's exclusion of evidence of alleged attempted murder of defendant's ex-husband in murder trial of defendant's patients because evidence was inadmissible under Rules 404(b) and 403). The jury would be improperly motivated by the temptation to conclude that if the Defendant is the type of person to stalk women, he is the kind of man to plot and kill his ex-wife. *Queen* makes clear that such propensity evidence is prohibited under Rule 404(b). 132 F.3d at 995–96.

Specifically, the Court first turns to the alleged harassment of Ms. Lowe. Although the Government correctly states that there is no *per se* rule against admitting bad acts *after* the charged offense, common sense dictates that under most circumstances the subsequent acts must occur sufficiently close in time to have probative value. Here, "the allegedly similar act[ ] *followed* the one in dispute, a sequence that further weakens the link. Projection of an evil purpose backward in time seems weaker than inferring its continuation. The temporal (as well as the logical) relationship between a defendant's later act and his earlier state of mind attenuates the relevance of such proof." *Jankins v. TDC Mgmt. Corp.,* 21 F.3d 436, 440 (D.C.Cir. 1994) (emphasis in original) (citations and internal quotations omitted) (holding that other bad acts occurring months and years after matter in issue were too remote to be probative).

It is difficult to see how the Defendant's harassment of Ms. Lowe in 2001 bears any probative value on the Defendant's state of mind at the time he allegedly planned and executed the kidnaping of Ms. Lentz in April 1996. This is not an instance where the subsequent act is an extension of the charged offense, such as a subsequent drug deal in the charged narcotics conspiracy. Nor is this a case where the subsequent act is so similar to the charged offense that its relevance is unquestioned. The connection between the non-physical harassment of Ms. Lowe and her potential suitors to plotting the kidnaping of Ms. Lentz to cause her death five years prior is far too tenuous. Even if the Court were to accept that evidence of Ms. Lowe's harassment was relevant to an issue in this case other than character, such evidence remains inadmissible because any minor probative value is substantially outweighed by the risk of unfair prejudice toward the Defendant.

Although the alleged harassment of Ms. Cherry stands on somewhat separate footing because of the lack of a temporal lag, the ultimate result is the same. Applying the four prongs in *Queen,* the acts of alleged harassment against Ms. Cherry and her male friends are inadmissible under Rules 404(b) and 403. At bottom, the evidence is being introduced to demonstrate that the Defendant is the kind of man who would physically harm a woman if she angers him. In other words, it is offered to prove "the character of [the Defendant] in order to show action in conformity therewith." FED. R. EVID. 404(b).

This is not a case where the Government seeks to confirm the identity of the defendant by providing modus operandi evidence or the kidnaping of Ms. Lentz is an extension of the events concerning Ms. Cherry. The alleged acts of harassment against Ms. Cherry are not very similar or relevant to the mental planning and physical execution of luring Ms. Lentz across state lines to cause her death two years later.

Even if these acts were relevant to the Defendant's state of mind leading up to the disappearance of Ms. Lentz in April 1996, or lack of mistake, the probative value would be substantially outweighed by their prejudicial effect. Evidence of stalking or harassment is the type of evidence that would cause a jury to be swayed by its emotions and collateral allegations. Admitting evidence of stalking and harassment in unrelated cases would risk the danger that the jury might convict the Defendant not because of the evidence indicating that he kidnaped and caused the death of Ms. Lentz, but rather that he was the type of overly possessive and violent man who would do so.

## IV. CONCLUSION

With respect to the Government's Motion in Limine to Admit Out of Court Statements by Doris Lentz the Court holds as follows. First, in general none of the proffered hearsay statements by Ms. Lentz are admissible to show prior abuse because such statements are merely reports by Ms. Lentz about past events. No indication exists that Ms. Lentz was perceiving the events as they were occurring, that the excitement of the relayed incidents were ongoing, nor that the statements exemplified Ms. Lentz's emotions at the time of the incidents. Therefore, no hearsay statements of Ms. Lentz are admissible to show prior abuse. Second, the proffered hearsay statements showing fear for the Defendant are admissible under the state of mind exception to the hearsay rule to show Ms. Lentz's emotions as long as the declaration reflects the state of mind during the time in question and not the factual occurrence engendering that state of mind. In general, the stated actions that caused the emotion itself are not admitted because such statements would be a recantation of past factual occurrences.

Third, all of the statements from Ms. Lentz with respect to fear are inadmissible under the present sense impression and excited utterance exceptions because no indication exists that such statements were immediately connected to Ms. Lentz perceiving the actions described or that an excitable event just occurred. Fourth, most of the statements by Ms. Lentz of intent and belief surrounding the date of her disappearance are admissible under the state of mind exception to the hearsay rule because they may support an inference that she did in fact engage in such conduct. Fifth, the only documented statement produced and referenced by the Government that is admissible is Ms. Lentz's deposition testimony referencing her accounts of telling the police and others about Defendant's abusive behavior and harassing phone calls. Sixth, the residual hearsay exception does not apply to admit these statements because no independent indicia of reliability or trustworthiness is present that would serve the interest of justice to admit Ms. Lentz's statements or documented accounts. Seventh, the forfeiture of wrongdoing exception does not apply to admit these statements because the Court is unwilling to extend the Rule's reasoning to apply to testimony of a decedent victim for whose death a defendant is on trial.

With respect to the Government's Motion to Introduce Rule 404(b) Evidence the Court holds as follows. First, the June 4, 1990, incident where Defendant allegedly

shoved Ms. Lentz into a door jam, is IN-ADMISSIBLE under Rules 404(b) and 403. Second, the September 2, 1990, incident where Defendant allegedly struck Ms. Lentz on the arm, is INADMISSIBLE under Rules 404(b) and 403. Third, the August 15, 1991, incident where Defendant allegedly threw a bottle of cornstarch at Ms. Lentz, is INADMISSIBLE under Rules 404(b) and 403. Fourth, the August 16, 1991, event where Ms. Lentz allegedly sustained bruises and swelling on arms and legs in an altercation with the Defendant, is INADMISSIBLE under Rules 404(b) and 403. Fifth, the November 2, 1994, incident where Defendant allegedly threw Ms. Lentz down a hill, is INADMISSIBLE under Rules 404(b) and 403. Sixth, the June 1, 1995, incident where Defendant allegedly yelled at Ms. Lentz and threw shoes at her, is INADMISSIBLE under Rules 404(b) and 403. Seventh, the December 14, 1995, incident where Defendant allegedly refused to return the couple's child to Ms. Lentz until she paid a late fee, is INADMISSIBLE under Rules 404(b) and 403.

Eighth, the incidents of undetermined dates in which the Defendant allegedly beat Doris Lentz, blackened her eyes and broke her ribs, are ADMISSIBLE under Rules 404(b) and 403 to the extent that the witnesses will testify to personally observing Ms. Lentz's bruises, black eyes and broken ribs. Any other testimony on the subject is inadmissible. Ninth, the alleged harassing phone calls made by Defendant to Ms. Lentz at her apartment in Arlington, Virginia between 1991 and 1996, are ADMISSIBLE to the extent that the evidence is recorded on tape and relevant to the issues for trial. Tenth, the evidence of alleged threats made to Ms. Lentz by the Defendant, including (a) "he would get her and there won't be a body," (b) "O.J. Simpson had the right idea," (c) "Nicole and Ron Goldman got what they deserve," (d) "if she brought up any evidence of physical abuse in court he would ram it down her throat," is INADMISSIBLE under Rules 404(b) and 403. Eleventh, the incident in the fall of 1995 where Defendant slashed Ms. Lentz's tires is INADMISSIBLE under Rules 404(b) and 403.

Twelfth, Defendant's alleged harassment of the staff at the Busy Bee Day Care Center, a clergyman, and Mr. Hench is INADMISSIBLE under Rules 404(b) and 403. Thirteenth, Defendant's alleged harassment of Ms. Lowe and Ms. Cherry is INADMISSIBLE under Rules 404(b) and 403. Accordingly, it is hereby

ORDERED that the Government's Motion in Limine to Admit Out–of–Court Statements made by Doris Lentz as Non–Hearsay or as an Exception to the Hearsay Rule is GRANTED in PART and DENIED in PART;

ORDERED that the Government's motion to admit evidence under Rule 404(b) is GRANTED in PART and DENIED in PART.

The Clerk is directed to forward a copy of this Order to counsel of record.